[Crim. No. 1200.    First Appellate District, Division Two.—December 6, 1924.]

## THE PEOPLE, Respondent, v. WILLIAM O'BRIEN, Appellant.

[1] Criminal Law—Robbery—Acts of Companion—Improper Cross-examination.—In this prosecution for robbery, one of the witnesses for the prosecution having tendered himself as a witness as to what he saw and did, but did not give any evidence on direct examination as to what his companion saw or did, the trial court did not err in sustaining the prosecution's objection to a question, asked by defendant upon cross-examination, as to whether said companion identified the defendant.

[2] Id.—Identification of Defendant—Misconduct of District Attorney.—In such prosecution, counsel for defendant, after asking many questions in an attempt to prove his whole case out of the mouth of a witness for the prosecution, having offered to prove that on the day said witness went to the jail and identified defendant, the latter was by the police department and the officials thereof accused of the crime of robbery committed on a different date, and having further offered to follow that up by proof that all of that particular day defendant was in jail at a certain town during the entire twenty-four hours, "charged with disturbing the peace," the prosecuting attorney did not commit error in asking the question, "Is that all—all the charges that counsel is willing to stipulate this man was accused of at that time."

[3] Id.—Impeachment of Witnesses—Instructions.—In such prosecution, defendant having been permitted to question the principal witness for the people regarding every extrajudicial statement made by said witness, and the court having instructed the jury that they were the sole and exclusive judges of the effect and value of evidence and of the credibility of witnesses, and as to the effect of contradictory evidence and false testimony, it was not error to refuse the further requested instruction that "a witness may be impeached by showing that the witness has made contradictory statements, extrajudicially, that is to say, outside of the courtroom.  To impeach means to discredit.  If you believe that the complainant . . . described the man who robbed him to the police department immediately thereafter, and said description does not tally with or fit the defendant, such evidence is impeaching evidence, and you are to consider such evidence as bearing upon the truthfulness of that witness' testimony."

[4] Id.—Failure of Defendant to Take Stand—Presumption of Innocence—Instructions.—In such prosecution, the trial court having instructed the jury that the defendant is not required to

take the stand and establish his innocence, that notwithstanding his failure to take the stand the jury is forbidden to draw from his silence any inference against him, that the defendant is assumed to have a good character and is presumed to be innocent until the contrary is proven, it was not error to refuse defendant's requested instruction that "The defendant in a criminal case is not called upon to make explanation or suggest a solution or clear ambiguities whether real or imaginary. He is entitled to rest in safety and security upon his plea of not guilty and upon presumption of innocence."

(1) 40 Cyc., p. 2501, n. 94.    (2) 16 C. J., p. 911, n. 74.    (3) 16 C. J., p. 1063, n. 85.    (4) 16 C. J., p. 1066, n. 89, p. 1067, n. 92.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Harold Louderback, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin V. McKenzie and Nathan C. Coghlan for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was convicted of the crime of robbery. From the judgment and the order denying him a new trial he has appealed.

On the twenty-fourth day of September, 1923, Paul Quirk, as cashier of the Great Western Smelting & Refining Company, went to the Anglo and London Paris National Bank of San Francisco and there procured the sum of two thousand four hundred dollars to meet the weekly pay-roll of said company. He was accompanied by a Mr. Blum. They returned from the bank in an automobile. While they were returning they passed down First Street to Folsom Street and then turned into Folsom Street. As they did so another automobile containing two men crowded their car into the curb, causing it to stop. When their car came to a stop one of the men in the other automobile alighted and pointed a gun at Quirk and Blum and demanded the money. The bandit was on the left-hand side of the machine and standing in the street. Blum sat on the same side of the machine and was between the bandit and Quirk. Upon the demand

of the bandit Quirk handed the satchel containing the money to the bandit. During this time the other bandit had remained in the machine. Neither one of the bandits was masked. On the last day of December, 1923, Quirk and Blum were both called to the city jail.

"Mr. U'Ren: Q. Now did you again see this defendant after this occurrence upon the street that you have just related? A. I think it was the last day of December, 1923. Q. Where? A. In the city jail. Q. And under what circumstances? A. I was taken up to a room there where there were seven or eight men lined up, and asked to—and I was asked if I could pick out the man who held me up out of that bunch. Q. Did you pick him out? A. I did. Q. Who did you pick out? A. O'Brien. Q. The defendant here? A. The defendant."

Otherwise than to state the facts of the occurrence on September 24, 1923, the direct examination of the witness Quirk contained not a word of evidence as to any other matter, conversation, or thing except as above stated. In particular he was not asked of or concerning any conversation, or conversations, except as above stated. On cross-examination counsel for the appellant developed certain inconsistencies regarding the statements made at different times by the witness of and concerning the weight of the bandit, the height of the bandit, and the exact color of the bandit's hair. He also developed the fact that the bandit who held the revolver stood within three feet of the witness in plain sight and that he could be seen plainly and that he was unmasked. In conducting his cross-examination the attorney for the appellant was allowed, without objection, to state that on the day of the robbery Detective McGrath came to the office and interviewed the witness of and concerning the holdup and to state fully statements made by the witness to McGrath at that time. In the same manner the witness was fully examined regarding his visit to the city jail on December 31, 1923; to state who accompanied him and where they went. [1] Following these proceedings the witness was then asked: "Q. Mr. Blum, the gentleman who was with you on that day, did not identify this defendant, did he? Mr. U'Ren: We object upon the ground that it is incompetent, irrelevant and immaterial, not cross-examination . . . hearsay, not the best evidence. The Court: . . . I will sustain the objection." The ruling was clearly correct. On

direct examination the witness Quirk had tendered himself as a witness as to what he saw and did, and had not claimed to give any evidence as to what Mr. Blum saw or did.

[2]. After asking many questions in an attempt to prove his whole case out of the mouth of the witness, appellant's counsel then stated (Tr., p. 21): "Mr. McKenzie: Without transgressing your Honor's ruling, I now offer to prove that as a result of this same show-up with the same parties in the line, that the defendant was by the police department and the officials thereof accused of the crime of robbery committed on August 24, 1923, and we further offer to follow that up by proof that all of that day he was in jail at Santa Rosa during the entire twenty-four hours, charged with disturbing the peace. Mr. U'Ren: Is that all—all the charges that counsel is willing to stipulate this man was accused of at that time? Mr. McKenzie: I now assign the remark of the district attorney as prejudicial misconduct and ask your Honor to instruct the jury to disregard it. In answering you, I will say that is all. Mr. U'Ren: And I will state that I now assign the offer of counsel as prejudicial misconduct and ask the court to instruct the jury to disregard it. The Court: I think the statements of the attorney will be shown— the jury will be admonished that they are not evidence in any way, and consequently cannot be considered as such, and will be disregarded as such unless they are stipulations. Let us proceed with the case." Practically the same offer was made previously. (Tr., p. 18.) Counsel complains that the admonition of the court did not cure the alleged errors. This remark assumes that error was committed. We do not agree. The appellant's contention simplified amounts to this: On December 31, 1923, at the time and place the witness Quirk identified the appellant, another person mistakenly identified this defendant, therefore this defendant should be entitled to prove such fact to the end that the jury might determine as to whether or not the witness in the chair was making an error. Such a contention has no logic in it. However, the appellant presented the contention. To make the contention it became necessary for him to demonstrate the fact that the other error had been committed. To complete that demonstration it became necessary for the appellant to disclose the fact that he was in jail on August 24, 1923. As to the case on trial, it was utterly immaterial,

viewed from any light, as to what he was in jail for on August 24th. Nevertheless the appellant sought to have the jury informed that he was in jail for disturbing the peace and thus minimize the slur on the defendant's character which the defendant, through his attorney, had, we must assume, introduced and admitted in the belief that he was attempting thereby to serve his client. In other words, the appellant had been driven to the adoption of heroic methods. But be that as it may, he had adopted the incident as a matter of defense. Having adopted it, he was bound to adopt it with its burdens as well as its benefits. If on the day in question he was in jail accused of a higher offense than disturbing the peace, or accused of various offenses, we can see no reason why he should be entitled to place a false record before the jury, namely, that he was there for disturbing the peace, whereas he was there for other reasons, although, as we stated above, we see no reason why his attorney should have made any statement of or concerning the reason for his incarceration at Santa Rosa on August 24, 1923. If his attorney had omitted that part of his offered proof, no doubt his offer would not have been followed by the question propounded by the district attorney and which question is the subject of this discussion.

[3] The appellant asked the court to instruct the jury as follows: "You are instructed that a witness may be impeached by showing that the witness has made contradictory statements, extrajudicially, that is to say, outside of the courtroom. To impeach means to discredit. If you believe that the complainant Quirk described the man who robbed him to the police department immediately thereafter, and said description does not tally with or fit the defendant, such evidence is impeaching evidence, and you are to consider such evidence as bearing upon the truthfulness of that witness' testimony." The court refused the instruction, but did instruct the jury as follows: "The jury are the sole and exclusive judges of the effect and value of evidence addressed to them and of the credibility of the witnesses who have testified in the case, and the character of the witnesses as shown by the evidence should be taken into consideration, for the purpose of determining their credibility and the facts as to whether they have spoken the truth. And the jury may scrutinize not only the manner of the witnesses

while on the stand, their relation to the case, if any, but also their degree of intelligence. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testified; his interest in the case, if any; or his bias or prejudice, if any, against one or any of the parties; by the character of his testimony; or by evidence affecting his character for truth, honesty and integrity; or by contradictory evidence; and the jury are the exclusive judges of his credibility. A witness false in one part of his or her testimony is to be distrusted in others; that is to say, the jury may reject the whole of the testimony of a witness who has willfully sworn falsely as to a material point; and the jury being convinced that a witness has stated what was untrue, not as the result of mistake or inadvertence, but willfully and with design to deceive, must treat all of his or her testimony with distrust and suspicion, and reject all unless they shall be convinced, notwithstanding the base character of the witness, that he or she has in other particulars sworn to the truth.'' As applied to this particular case we think that the instruction given covered the subject matter contained in the requested instruction and went further than the appellant was entitled to have the language extend. Furthermore, during the trial of the case the appellant was allowed to ask, and the witness Quirk was required to answer, regarding every extrajudicial statement that he had made. The action of the trial court in so receiving the testimony was in effect an instruction that the testimony was admissible and for the consideration of the jury. The requested instruction went no further.

[4] Instruction number seven, as requested by the appellant, is as follows: ''The defendant in a criminal case is not called upon to make explanation or suggest a solution or clear ambiguities whether real or imaginary. He is entitled to rest in safety and security upon his plea of not guilty and upon presumption of innocence.'' The court refused to give the instruction. The respondent defends the ruling of the trial court by contending that the language, ''entitled to rest in safety and security upon his plea of not guilty, and upon the presumption of innocence,'' is not a sound statement of the law. In his reply brief the appellant does not cite us to any authority holding that the instruction is a full and complete statement of the law. We know of

none. Furthermore, the trial court instructed the jury as follows: "The defendant is not required to take the witness stand and establish his innocence. The defendant is entitled to rest on the case of the prosecution without putting in any evidence."

The trial court refused to instruct the jury as follows: "You are instructed that it is not incumbent upon the defendant to take the witness stand and testify in this case. It is his positive right to remain absolutely silent and the law forbids the jury to draw from his silence any inference against him. Therefore you are not to consider his silence in this case in any manner in arriving at the verdict but must decide the case alone upon the facts which have been allowed in evidence." The instruction given by the court and quoted immediately above covered this requested instruction in part. But the court went further and in another instruction it said: "The court instructs the jury that the law assumes that a defendant who is upon trial for an offense has a fair character; and unless evidence to the contrary is given to the jury, he is entitled to the benefit of this presumption in their consideration of the weight to be given to the testimony bearing upon his guilt. . . . A defendant in a criminal action is presumed to be innocent until the contrary is proven. And in a case of a reasonable doubt whether his guilt is satisfactorily shown he is entitled to an acquittal. . . . The burden of proof is upon the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proven guilty." Considering all of the instructions that were given, we think there was no error in refusing to give the instruction that was refused.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1925.

All the Justices concurred.